# In the United States Court of Federal Claims

Nos. 15-616C, 15-617C,
15-618C, 15-619C, 15-620C
(Originally Filed: September 9, 2015)
(Re-filed: September 17, 2015)[1]

* * * * * * * * * * * * * * * * * * * *

SCHOTT GOVERNMENT SERVICES, LLC,

    *Plaintiff*,

v.

THE UNITED STATES,

    *Defendant,*

ORAN SAFETY GLASS, INC.,

    *Intervenor.*

* * * * * * * * * * * * * * * * * * * *

Bid Protest; Post-Award; Judgment on Administrative Record; Contract Modification; 10 U.S.C. § 2304 (a)(1)(A); Security Clearance; Contract Interpretation

*Lee Dougherty*, Tysons Corner, VA, for plaintiff, with whom was *Katherine A. Straw*, Tysons Corner, VA, of counsel.

*Devin A. Wolak*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Martin F. Hockey, Jr.*, for defendant.

---

[1] This opinion was originally filed under seal. The parties were directed to confer and propose redactions. The court adopted the parties' suggested redactions, removed the information, and inserted brackets to replace the redacted content. The opinion is now prepared for release.

*Richard L. Moorhouse*, McLean, VA, for intervenor, with whom were *L. James D'Agostino*, McLean, VA, of counsel, and *Ryan Bradel*, Washington, DC, of counsel.

---

OPINION

---

BRUGGINK, *Judge*.

This is a post-award protest of a solicitation for transparent armor windows for use on Mine-Resistant Ambush-Protected ("MRAP") vehicles known as MRAP All-Terrain Vehicles ("M-ATV"). Plaintiff, Schott Government Services, LLC ("Schott") challenges the Defense Logistics Agency's ("DLA" or "the Agency") award of five separate contracts for the supply of the windows to the awardee, Oran Safety Glass ("OSG"). OSG intervened in the action. Currently before the court are the parties' cross-motions for judgment on the administrative record ("AR")[2] pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). The motions are fully briefed, and we heard oral argument on September 1, 2015. For the reasons explained below, we deny plaintiff's motion for judgment on the administrative record and we grant defendant's and intervenor's cross-motions for judgment on the administrative record.

BACKGROUND

The M-ATV transparent armor was developed by the government prior to this procurement for use on MRAP vehicles. Subsequent to its development, the transparent armor was assigned a National Stock Number ("NSN"), which is a label used by the government to identify an item that is routinely procured, stocked, and used by the government. After an NSN is assigned to a product, the government seeks approved sources to manufacture and supply the NSN through the Source Approval Request ("SAR") process. Once approved,

---

[2] The facts are drawn from the administrative record, which is presented in a unique fashion in this case. There are 8 sections: AR 118, AR 119, AR 120, AR 121, AR 137, CT(DLA), CT(TACOM), and CT(DIS). Each section is separately paginated.

sources can submit bids for later solicitations, seeking to be awarded a specific contract to supply that NSN.

OSG submitted its initial Source Approval Request ("SAR") in October 2011, seeking to be one of the approved sources for the NSNs sought in the procurement at issue in this case. CT(DLA)-148. In its SAR, OSG indicated that it followed U.S. Army TACOM Armor Transparent Purchase Description 2532 ("ATPD 2532") "for all test procedures, according to ballistic protection class defined by classified Annex [] DTA-184044." CT(DLA)-211; *see also* CT(DLA)-302. DTA-184044 is a drawing which provides precise protection class threat specifications. CT(DLA)-309. It is classified as SECRET, and "[p]roof of proper authorization and security clearance shall be required to obtain copies." *Id.* Also in its SAR, OSG represented to the Agency that it would follow a specific recipe for the composition of the windows, recipe [    ]. CT(DLA)-147, 212; Defendant's Appendix ¶ 8 (hereinafter Def.'s App.). This recipe had been previously approved as satisfying ATPD 2532. *Id.* OSG was subsequently approved as a source for the M-ATV transparent armor. Schott was later added as an approved source for the transparent armor in July 2014.[3]

In June 2014, DLA issued five Requests for Proposals ("RFP") for the supply of the M-ATV transparent armor.[4] The M-ATV Solicitations sought the supply of transparent armor with the same NSNs for which OSG and Schott had been approved as sources through the SAR process. The acquisition plan specifically noted that "[t]his acquisition will not be involving any classified documents or information."[5] AR 118-3-5; AR 119-3-5; AR 120-3-4; AR 121-3-5; AR 137-3-5. The procurements were conducted on a limited-source basis,

---

[3] The original acquisition plan, created in June 2014, did not list Schott as an approved source. The plan was amended in July 2014 to add Schott as an additional approved source for the M-ATV transparent armor.

[4] Nos. SPE7L3-14-R-0118, SPE7L3-14-R-0119, SPE7L3-14-R-0120, SPE7L3-14-R-0121, and SPE7L3-14-R-0137 (collectively, the "M-ATV Solicitations").

[5] The acquisition plan for the M-ATV Solicitations is a classified document, which is not released to the approved sources, but the placement of this statement in it shows that the government intended that the solicitations not involve any classified material or information.

as only OSG and Schott had been previously approved through the SAR process as sources for the NSNs sought. Proposals were evaluated according to "Best Value" procedures, and OSG was awarded the contracts during October 2014 and January 2015. Schott was subsequently notified that its offers were not accepted because they were not the low price offers after consideration of all the evaluation factors.

In January 2015, Schott contacted the Agency to express its concerns that OSG had changed its recipe for the transparent armor. Subsequently, the Army's Project Manager MRAP office ("PM MRAP") contacted the Agency in February 2015 regarding these concerns, and requesting production control testing, including re-certification of the recipe during ballistic testing. PM MRAP cited ATPD 2532 section 4.2.1, which stated that any changes made in the manufacturing process may be subject to First Article Testing ("FAT"). CT(DLA)-20. After analyzing the transparent armor manufactured by OSG, PM MRAP discovered that OSG had manufactured multiple configurations, only one of which had been submitted to the government through its SAR process. This discovery sparked concerns that OSG was delivering a configuration that had not been approved by the government. PM MRAP informed the Agency of its findings in March 2015, and provided a list of information that the Agency should request from OSG. CT(DLA)-144. A March 27, 2015 letter to OSG from the Agency advised OSG that the Agency had been made aware of its possible failure to comply with the contract. This letter informed OSG that the delivery of any composition other than [    ] was not authorized and would be considered non-compliance, and requested that OSG provide the Agency with quality/inspection records identifying the recipe that was or would be delivered pursuant to each contract.

OSG responded by letter on April 8, 2015, providing an analysis of what it suggested was a misunderstanding between OSG and the Agency, and citing ATPD 2532 paragraph 3.2, which provides that "[a]fter FAT approval, no material or process changes that may affect product performance, including ballistic integrity and environmental durability, shall be made without the procuring activity approval." CT(DLA)-367. According to the letter, after performing the necessary tests, OSG concluded that the new recipe, [    ], did not affect performance. Therefore, OSG believed that based on its interpretation of ATPD 2532, it could substitute recipe [    ] for recipe [    ] in its deliveries to DLA, and thus began to deliver recipe [    ] to fulfill its contracts with the Agency. OSG suggested that it had begun to develop recipe [    ] after developing some concerns regarding the availability and

quality of some M-ATV raw materials. Moreover, OSG indicated that this new recipe had been submitted on April 8, 2015, for a source approval request.

DLA subsequently responded with a cure notice on April 21, 2015. The notice informed OSG that the government considered OSG's supply of nonconforming parts as endangering contract performance, and warned that unless the condition was cured within 10 days after receipt of the letter, the government might terminate the contract for default. The Agency stated that any cure had to result in the supply of transparent armor manufactured using recipe [    ], and had to address DLA's ability to identify and segregate any nonconforming parts that had already been sent to DLA. OSG responded with a cure plan, proposing new delivery dates for shipment of the [    ] recipe. The Agency was not satisfied with this cure plan because it did not address OSG's ability to obtain sufficient quantities of the recipe [    ] raw material to fulfill the remaining deliveries required by the contracts, it did not propose consideration for the delivery extensions, and because OSG failed to include data on the [    ] transparent armor that had been previously delivered under the contracts. The Agency requested that OSG fix these inadequacies by May 4, 2015. OSG subsequently provided the requested information within the requisite time frame, and the parties began negotiating an appropriate settlement.

An affidavit of the Agency's contracting officer, [        ], lists the events that took place during the negotiation process, and details the settlement eventually worked out by the parties. *See* Def.'s App. The affidavit notes a number of the Agency's concerns about whether or how to proceed with a settlement. The Agency had outstanding orders from the military for the windows, and a number of windows had already been delivered and accepted, as some of the contracts were well into performance. Meanwhile, on June 4, 2015, the Army had approved the [    ] recipe through its SAR process, thus indicating to the Agency that the recipe was technically acceptable.

The Agency went ahead with modifications rather than complete cancellations on June 24, 2015. The modifications required that all future deliveries be in conformance with the original contract, meaning that OSG would deliver the originally approved [    ] recipe, and required that OSG make a cash payment and an in-kind payment to cover the government's cost in handling and processing nonconforming goods previously delivered. Additionally, the modifications allowed OSG to extend its time for delivery for

all outstanding deliveries due under the contract in exchange for cash consideration. All of the cash payments required of OSG totaled [     ], and the value of the in-kind payments was [     ]. In accordance with the modified contracts, final delivery has occurred with respect to some of the contracts, and all remaining deliveries of the transparent armor are scheduled to occur by the end of October 2015.

DISCUSSION

Pursuant to the Tucker Act, this court has jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). Schott is an "interested party" because it is a prospective bidder "whose direct economic interest would be affected by the award of the contract." *Am. Fed'n of Gov't Emps., ALF-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2)(a) (2012)).

This court's review is limited to the existing administrative record generated by the Agency in connection with the procurement action at issue. *See* RCFC 52.1. We review the administrative record pursuant to the standards set forth in section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) (2012). Thus, we may set aside an Agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2012). The protestor bears the burden of establishing that the Agency's decision lacked a rational basis or was otherwise in violation of applicable law or regulation. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Additionally, plaintiff must show prejudice, meaning that had it not been for the error in the procurement process, there is a reasonable likelihood that the challenger would have been awarded the contract. *Data Gen. Corp. v Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

Plaintiff challenges two aspects of the procurement. Plaintiff's primary challenge is directed at the modifications to OSG's contract after the Agency discovered that OSG was delivering nonconforming windows. Plaintiff contends that the modifications lacked a rational basis because the Agency unreasonably accepted OSG's contention of an alleged latent ambiguity in the solicitation, allowing OSG to supply products that did not conform to the required technical specifications. According to plaintiff, this decision violated

the Competition in Contracting Act ("CICA")[6] in that it thwarted full and open competition. Plaintiff's second argument is that the initial award of the contracts to OSG violated law and regulation because the Agency awarded the contract to OSG despite its lack of a required facility clearance ("FCL") to supply the transparent armor.

Plaintiff's first argument, that the contract modifications lacked a rational basis, rests on plaintiff's belief that OSG never intended to supply a conforming product under the contracts, and that DLA's acceptance of nonconforming products as part of the modifications effectively eliminated any competition. In its reply brief it argues that the contract modification brought the contracts outside the scope of the solicitation, and therefore, under CICA, a new procurement was required in order to preserve the competitive bidding process. *See* 10 U.S.C. § 2304 (a)(1)(A) (2011) ("[T]he head of an Agency in conducting a procurement for property or services . . . shall obtain full and open competition through the use of competitive procedures . . . ."); *CCL, Inc. v. United States*, 39 Fed. Cl. 780, 791 (1997) (explaining that CICA's requirements "cannot be avoided by using the device of contract modification").

As support for its position that OSG never intended to supply conforming products, plaintiff relies on an April 15, 2015 letter from OSG's President and CEO to DLA setting out an analysis of the misunderstanding between the parties. *See* CT(DLA)-367-70. This letter suggests that after OSG was approved as a source, it discovered some risks regarding the availability of M-ATV raw materials, which would lead it unable to produce composition [    ]. As a result, OSG began testing other compositions of the formula for the transparent armor, and developed a different composition, [    ]. Plaintiff does not accept the truth of OSG's responses to the Army, and suggests that OSG had always intended to supply composition [    ], in violation of the M-ATV Solicitations, which specified the correct NSNs and which explicitly disallowed substitution. Schott argues that it was unreasonable and prejudicial to it to allow OSG to rely on a supposed alleged latent ambiguity to deliver substitute products because it was inconsistent with the terms of the original solicitation and thus precluded Schott from competing.

Defendant recognizes in its response that there were serious errors with OSG's performance under the contracts, but maintains that these issues are not

---

[6] 10 U.S.C. § 2304 (a)(1)(A) (2011).

the proper subject for a bid protest. It argues that Schott cannot rest a bid protest on what amounts to a matter of post-award contract performance, something beyond the reach of the court's bid protest jurisdiction under 28 U.S.C. § 1491(b).  Relying on the affidavit of  DLA's Contracting Officer,[     ], defendant contends that the award to OSG cannot be faulted, because it proposed to supply the exact product.  It was only after the awards were made and well after performance had commenced that the government became aware that OSG was providing nonconforming products.

Defendant also argues that Schott's argument is factually unfounded, in that the Agency rejected OSG's interpretation of the contract. It never knowingly accepted non-conforming product and merely devised a solution for a serious problem after it was discovered. Because a majority of the deliveries had been accepted and paid for by the time DLA discovered that they were nonconforming, the agency's rights were governed by FAR 52.246-2(k) and (l). This regulation stipulates that the government's acceptance of an item "shall be conclusive, except for latent defects, fraud, [or] gross mistakes amounting to fraud." FAR 52.246-2(k) (2014). The regulation further provides that following non-conclusive acceptance, the government may elect to have the awardee "repay such portion of the contract as is equitable under the circumstances if the Contracting Officer elects not to require correction or replacement," FAR 52.246-2(l) (2014), which defendant contends is exactly what the Agency did. We agree with defendant. The agency never endorsed the manner in which OSG proceeded with these contracts and instead devised a practical solution to a problem of OSG's making.  Schott's CICA rights, in other words, were not compromised by anything the agency did.

We note, moreover, that in exercising jurisdiction over a bid protest, "the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3).  The [     ] affidavit makes clear the agency's concern that the military not be delayed in getting armored windows for its vehicle for use in a combat zone. Returning the parties to the position they were in prior to contracting would require pulling the M-ATV fleet out of service until replacement transparent armor windows could be obtained through a new procurement. *Id.*

We do not mean to suggest that circumstances could not arise in which a contract modification might depart materially from the contract's original scope so as to trigger this court's bid protest jurisdiction. *See, e.g.*, *Glob.*

8

*Computer Enter.'s, Inc. v. United* States, 88 Fed. Cl. 359, 452 (2009); *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 108 (2004). In this case, however, given the passage of time, the security concerns involved, and the agency's insistence on compensation for non-performance, we are persuaded that concerns reflected in other cases are not triggered here.

In a separate argument, plaintiff alleges that the initial awards to OSG violated law and regulation because OSG did not have the facilities clearance to access the classified performance specifications required to ensure ballistic qualification during First Article Testing ("FAT") and Production Control Testing ("PCT"). Although nothing in the solicitations at bar makes reference to the need for any security clearances, plaintiff puts together its argument by drawing from general regulatory requirements (award can only be made to bidders who are capable of performing the contract, FAR 9.103) and from requirements associated with SAR approval. According to plaintiff, because the ballistic protection level for the transparent armor is classified as SECRET, plaintiffs should have had an FCL to access it during SAR approval. *See* DoD 5220.22-M, 2-100 ("[T]he contractor will not be afforded access to classified information until the FCL has been granted."). Plaintiff notes that nowhere in the record is there an indication that the Agency confirmed that OSG held an FCL.

Defendant does not dispute that OSG lacks an FCL, but contends that an FCL was not required for award of this contract. Defendant's position is that these contracts were simply part-number buys for the supply of previously-approved products. These parts were approved in 2011 to be manufactured to composition [    ] after approval of OSG's SAR. Moreover, defendant contends that to the extent plaintiff asks the court to review OSG's access to classified material during the SAR process, such matters are nonjusticiable and reserved to the executive.

Because we do not construe plaintiff's argument as requiring review of a decision to award or deny access to classified information, we see no need to entertain the government's nonjusticiability argument. Defendant is correct, however, that an FCL was not required for award of these contracts. Nowhere in the record is there any indication that the M-ATV Solicitations required an FCL. In fact, the Federal Acquisition Regulations require that in the event a solicitation involves classified information, the contracting officer must include a security requirements clause in the solicitation. FAR 4.403, 4.404, 52.204-2 (2014). There were none here. Plaintiff may be correct that

9

participation in the MRAP M-ATV program and becoming an approved source through the SAR process required a facilities security clearance, but the award of the parts contracts themselves do not,[7] so the issue is outside the bid protest jurisdiction of this court.

As for the parties' remaining arguments, we do not find them relevant to our decision. Defendant's laches argument is unpersuasive. Laches serves to bar a claim when plaintiff has delayed filing suit for an inexcusable amount of time so as to result in prejudice to the defendant. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1333 (Fed. Cir. 2009). However, the record does not show that plaintiff's delay in filing this claim was inexcusable. Plaintiff did not sit on its rights; starting in January 2015 it was active in seeking information from the Agency regarding OSG's delivery of nonconforming products, and was not given information adequate to support its claim until well into 2015. *See* CT(TACOM)-1-35. Moreover, because we do not find that the Agency's decisions to award the contracts to OSG and to modify the contracts were unreasonable or violated law or regulation, we do not need to assess whether plaintiff was prejudiced, and need not consider the merits of plaintiff's claim for injunctive relief.

## CONCLUSION

We conclude that the agency exercised reasonable judgment both in awarding the contracts to OSG and in entering into contract modifications upon its discovery of OSG's delivery of nonconforming parts. We therefore deny plaintiff's motion for judgment on the administrative record and grant defendant and intervenor's cross-motions. The Clerk is directed to enter judgment accordingly. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

---

[7]Although it would not have been available to the bidders, the source acquisition plan explicitly states that security clearances are not required under the solicitations.